# EXHIBIT 2

CAUSE NO. 2017-76204

| | | |
|---|---|---|
| SUE ANN LOPEZ, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| IPFS CORPORATION, | § | |
| | § | |
| Defendant. | § | 152ND JUDICIAL DISTRICT |

## DEFENDANT IPFS CORPORATION'S MOTION TO DISMISS BASED ON FORUM SELECTION CLAUSE AND, IN THE ALTERNATIVE, PLEA IN ABATEMENT AND MOTION TO COMPEL ARBITRATION

Pursuant to the Texas Rules of Civil Procedure, Defendant IPFS Corporation ("IPFS") files this motion to dismiss based on the parties' contractual forum selection clause. In the alternative, IPFS seeks to abate this case and to compel arbitration. In support thereof, IPFS respectfully shows as follows:

## I.   BACKGROUND

Plaintiff Sue Ann Lopez ("Lopez") was employed by IPFS as a sales representative from July 6, 2015 to November 1, 2017.

At or around the time she initiated her employment with IPFS, Lopez signed the Confidentiality, Non-Disclosure, Non-Competition and Non-Solicitation Agreement ("the Non-Compete Agreement"). *See* Exhibit A to Lopez's Petition.

The Non-Compete Agreement contains a number of provisions, including a non-solicitation provision, prohibiting Lopez from engaging in specific competitive conduct following the end of her employment. Specifically, Lopez promised in the Non-Compete Agreement that, following her termination, she would not "[i]nduce or attempt to induce

. . . call upon, solicit, defer or take away, or attempt to do so, the business or patronage of any [customer], [potential customer], or client of [IPFS]  . . . with which [Lopez] dealt while employed by [IPFS]." *Id.* at p. 3.

In addition, the Non-Compete Agreement contained the following forum-selection clause in the event of a dispute between the parties:

> Jurisdiction and Choice of Law. In the event of a dispute concerning this Agreement which cannot be resolved by mutual agreement, the ***parties shall be required*** to pursue their rights in any court of competent jurisdiction sitting *in Kansas City, Missouri*, which shall be the ***exclusive mandatory venue*** for any such disputes. This Agreement will be governed by Missouri law, without regard to its choice of law rules.

Exhibit A to Lopez's Petition (emphasis added) (hereinafter "the Forum-Selection Clause"), mandating that all suits be brought in a Kansas City, Missouri court.

A few months later, on or about November 17, 2015, IPFS rolled out a new employee handbook.  One of the addendums to the employee handbook is the IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement (the "Non-Solicitation Agreement").  A true and accurate copy of the Non-Solicitation Agreement is attached hereto as **Exhibit 1**, and Lopez's signed Acknowledgement of the Non-Solicitation Agreement is attached hereto as **Exhibit 2.**

The relevant provisions of the Acknowledgement and Non-Solicitation Agreement state the following:

> I shall not engage in any of the following conduct during my employment and for one year following the end of my employment . . .
>
> (b) for any person or entity with whom I communicated on behalf of [IPFS] during my employment as part of my work duties (including, without limitation, any customers, insureds, managing general agents, general agents,

insurance agencies or brokers, and their agents and insureds), I shall not communicate with any such person or entity for the purpose of directly or indirectly soliciting business in competition with [IPFS] or otherwise competing with [IPFS];

*See* Exhibits 1 and 2 (substantially similar terms in both Agreement and Acknowledgement). Further, the Non-Solicitation Agreement provides:

The obligations of Associates under this Agreement ***are in addition to the obligation that any Associate may have*** under any other confidentiality, non-solicitation, non-competition, restrictive covenant or similar agreement. This Agreement ***does not supersede or in any way lessen the obligation under any such agreement*** and the obligation under any such agreements remain in full force and effect.

*See* Exhibit 2, p. 4 (emphasis added). Meaning, the Non-Solicitation agreement is in addition to and does not replace the Non-Compete Agreement, which contains similar non-solicitation provisions.

Another addendum to the employee handbook is the Acknowledgement and Agreement to IPFS Corporation Arbitration Program ("Arbitration Agreement"). A true and correct copy of the Arbitration Agreement is attached hereto as **Exhibit 3**, and a true and correct copy of Lopez's signed Acknowledgement of the Arbitration Agreement is attached hereto as **Exhibit 4.**

The Arbitration Agreement covers "all legal claims arising out of or relating to employment," where the "only claims excluded . . . are claims by an Associate for workers' compensation benefits, unemployment compensation benefits, ERISA-related benefits . . . or claims filed with the National Labor Relations Board." Exhibit 3, p. 4. It "also applies by or against an Associate who has ended employment with [IPFS]." *Id.* at p. 1. Finally, the Arbitration Agreement provides:

3

> [E]ither the Associate or [IPFS] may file a court action ***seeking provisional equitable remedies*** to the extent such remedies are available under the law, including but not limited to temporary or preliminary injunctive relief, either before the commencement of or during the arbitration process, to preserve the status quo or otherwise prevent damage or loss pending final resolution of the dispute pursuant to the terms of the *[IPFS Corporation Arbitration] Program*.

*Id.* at p. 4 (emphasis added).

Reading the Non-Compete Agreement and the Arbitration Agreement together, claims relating to Lopez's post-employment activities are subject to arbitration, with a limited exception for preliminary injunctive relief *in Kansas City, Missouri only.*

Lopez left her employment with IPFS on November 1, 2017, and soon thereafter began employment with IPFS's direct competitor, U.S. Premium Finance. *See* Lopez's Complaint, ¶ 23. Less than two weeks later, on November 13, 2017, Lopez filed her Petition in Harris County, Texas, seeking declaratory judgment that her agreement is unenforceable and, in the event the non-solicitation provision is enforceable, that Lopez is not in violation of the agreement by communicating with clients or prospective clients who contact her. Her Petition, rather than seeking preliminary injunctive relief, prays for an "[e]ntry of judgment in [her] favor on all claims." *See* Petition, p. 7.

## II.    <u>LEGAL STANDARDS</u>

### A.    **Forum Selection Clauses**

To begin, "[f]orum selection clauses are *presumptively* valid." *In re Fisher*, No. 05-0311, 2014 Tex. LEXIS 164, at *12 (Tex. Feb. 28, 2014) (emphasis added); *In re Lyon Fin. Servs.*, 257 S.W.3d 228, 234 (Tex. 2008) (forum-selection clauses are "presumptively enforceable" in Texas); *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016);

*Deep Water Slender Wells v. Shell Int'l Exploration & Prod.*, 234 S.W.3d 679, 692 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) ("the trial court presumes that a mandatory forum-selection clause is valid and enforceable."). The party challenging the forum bears the heavy burden of overcoming this presumption. *In re Brown*, 441 S.W.3d 405, 407 (Tex. App.—Dallas 2013, orig. proceeding).

Absent a strong showing that the forum-selection clause is unenforceable, "a trial court should enforce a mandatory forum-selection clause by granting a motion to dismiss." *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712; *Deep Water Slender Wells*, 234 S.W.3d at 687.

### B.    Arbitration Agreements

"Parties seeking to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement." *Houston Progressive Radiology Assocs., PLLC v. Lee*, 474 S.W.3d 435, 442 (Tex. App.—Houston [1st Dist.] 2015, no pet.).

"When parties agree to arbitrate and the agreement encompasses the claims asserted, the trial court must compel arbitration and stay litigation pending arbitration." *PER Grp., L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 384 (Tex. App.—Dallas 2009, no pet.) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 171.021(b); *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 305 (Tex. 2006)).

### III. ARGUMENT

#### A. Lopez's claims fall within the scope of the mandatory forum-selection clause

In determining whether to enforce a forum-selection clause, this Court must first determine whether the plaintiff's claims fall within the scope of the clause. *Deep Water Slender Wells*, 234 S.W.3d at 687-688. In doing so, the Court looks at the language of the clause and the nature of the party's claims. *Id.* at 688. Lopez's claims for declaratory relief undeniably fall within the scope of the Forum-Selection Clause contained within the Non-Compete Agreement. The Forum-Selection Clause requires that "in the event of a dispute concerning this Agreement," the parties are "required to pursue their rights" in a Kansas City, Missouri court. The phrase "this Agreement" refers to the Non-Compete Agreement that Lopez attached to her Petition. Curiously, Lopez's Petition cites to language in the Non-Solicitation Agreement, as opposed to the Non-Compete Agreement. But this is a distinction without a difference, as both the Non-Compete Agreement and the Non-Solicitation Agreement prevent Lopez from doing exactly what she seeks in her declaratory judgment claims—clearance to sell premium finance products to the very same customers she served on behalf of IPFS. Accordingly, Lopez's claims for relief are within the scope of the Non-Compete Agreement's Forum-Selection Clause.

Furthermore, the Forum-Selection Clause is mandatory. A "mandatory" forum-selection clause is a provision in the contract "that requires certain claims to be decided in a forum or forums other than the forum in which the claims have been filed." *Id.* at 687 n.3. The Forum-Selection Clause states that the parties are "required" to pursue their rights

in Kansas City, Missouri, and that it be "the exclusive mandatory venue for any such disputes." Therefore, litigating in a Kansas City, Missouri court is mandatory, not merely encouraged or permissive. *See, e.g., id.* at 687 ("Under the unambiguous language of the Consulting Agreement, [the parties] agreed that the courts of The Hague shall have exclusive jurisdiction to resolve any controversy or claim of whatever nature arising out of or relating to the Consulting Agreement. This is a mandatory forum-selection clause.")

## B. Texas law requires dismissal of a claim where there is an enforceable, foreign forum-selection clause

Notably, in her entire seven-page Petition for relief, Lopez fails to acknowledge the existence of the Forum-Selection Clause, let alone address the standard for finding a forum-selection clause unenforceable. Thus, Lopez failed to meet the heavy burden required of her to overcome Texas's presumption of validity for forum-selection clauses. *See In re Brown*, 441 S.W.3d at 407.

Because the Forum-Selection Clause is presumed valid and because Lopez has failed to meet her burden, this Court must dismiss Lopez's Petition. Quite simply, where an enforceable forum-selection clause exists, "[a] motion to dismiss is the proper procedural mechanism for enforcing a forum-selection clause that a party to the agreement has violated in filing suit." *Deep Water Slender Wells,* 234 S.W.3d at 687; *Chandler Mgmt. Corp. v. First Specialty Ins. Corp.,* 452 S.W.3d 887, 891 (Tex. App.—Dallas 2014, no pet.); *CKH Family Ltd. P'ship v. MGD/CCP Acquisition, LLC*, No. 05–12–00573–CV, 2013 Tex. App. LEXIS 12722, at *4 (Tex. App.—Dallas Oct. 14, 2013, no pet.); *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712.

In addition, by dismissing the Petition, this Court will follow the Texas principle that courts respect the parties' freely negotiated contract. *In re AutoNation, Inc.,* 228 S.W.3d at 668 (enforcing a forum-selection clause and requiring the parties to litigate the enforceability of a non-compete provision in Florida). While Texas may have an interest in deciding the enforceability of a non-compete provision affecting one of its citizens, Texas has "never declared that fundamental Texas policy requires that every employment dispute with a Texas resident [] be litigated in Texas." *Id.* at 669. Instead, by "[a]llowing a lawsuit to proceed in a forum other than that for which the parties contracted promotes forum shopping with its attendant judicial inefficiency, waste of judicial resources, delays of adjudication of the merits, and skewing of settlement dynamics." *In re Fisher,* 2014 LEXIS 164, at *12. Because the "the parties' bargained-for agreement merits judicial respect," dismissal is required to ensure that the parties' issues "be heard in [the forum where] the parties explicitly contracted." *In re AutoNation, Inc.,* 228 S.W.3d at 669.

**C.    Lopez's claims also fall within the scope of the parties' Arbitration Agreement**

In November 2015, at the very same time Lopez agreed to and accepted the Non-Solicitation Agreement, she agreed to and accepted the Arbitration Agreement. Nevertheless, Lopez's Petition fails to acknowledge the existence of the Arbitration Agreement, and she makes no attempt to show that it is invalid or unenforceable, or that her claims for declaratory judgment fall outside the scope of the Arbitration Agreement. Indeed, based on the plain terms of the Arbitration Agreement, the Non-Compete Agreement, and the Non-Solicitation Agreement, this is a heavy burden she cannot meet.

Compelling arbitration is appropriate under the circumstances. *See, e.g.*, *PER Grp., L.P.*, 294 S.W.3d at 381 (compelling arbitration where former employee executed an employment agreement containing restrictive covenants).

### D. IPFS Initiated Action Against Lopez in the U.S. District Court for the Western District of Missouri for Preliminary Injunctive Relief

Rather than wait for Lopez to re-file in the correct forum, IPFS has initiated action against her for Breach of Contract in the U.S. District Court for the Western District of Missouri, and made a claim for preliminary injunctive relief. A copy of IPFS's Complaint is attached hereto as **Exhibit 5.** Lopez will not suffer any prejudice from dismissal, as her Phoenix-based attorneys can just as easily litigate in Kansas City as in Houston.

## IV. <u>CONCLUSION</u>

Lopez's Petition falls within the scope of both the Forum-Selection Clause in the Non-Compete Agreement and the parties' Arbitration Agreement. Dismissal, therefore, is appropriate under the circumstances.

WHEREFORE, Defendant IPFS Corporation prays that the Court dismiss this action in its entirety. In the alternative, Defendant IPFS prays that the Court abate the case and compel arbitration. Defendant IPFS Corporation also requests all other relief to which it is entitled.

9

Respectfully submitted,

BECK REDDEN LLP

By:_____
    David W. Jones
    State Bar No. 00790980
    djones@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010
Telephone: 713-951-3700
Telecopier: 713-951-3720

LATHROP GAGE, LLP
    Michael J. Abrams
    mabrams@lathropgage.com
2345 Grand Blvd., Suite 2500
Kansas City, Missouri 64108
Telephone: 816-292-2000
Telecopier: 816-292-2001

COUNSEL FOR DEFENDANT

## CERTIFICATE OF SERVICE

Pursuant to Harris County Local Rule 3.3.6, I certify that a reasonable effort has been made to resolve the issues set forth herein without the necessity of court intervention and the effort has failed. On December 22, 2017, I left a voice mail message and sent an email to Plaintiff's counsel to confer on the issues set forth herein. As of the filing of this motion, the undersigned has received no response.

_____
    David W. Jones

## <u>CERTIFICATE OF SERVICE</u>

This document was served in compliance with Rules 21 and 21a of the Texas Rules of Civil Procedure on the day of December 22, 2017.

_____
David W. Jones

# Exhibit 1

# IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement

### Non-Disclosure and Confidentiality Provisions

Associates who have access to Confidential Information as the result of their employment with IPFS Corporation and affiliated entities (all referred to herein as the "Company") agree to comply with the Non-Disclosure and Confidentiality Provisions of this Agreement, including but not limited to, the agreement not to disclose such Confidential Information except as necessary to perform the functions of their assigned job.

This Confidential Information may relate but is not limited to the operations, activities and business affairs of: (i) the Company; (ii) the Company's customers and insureds, (iii) managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds with whom the Company does business or otherwise communicates; (iv) other individuals and entities with whom the Company does business or otherwise communicates; and (vi) information about other Associates employed by the Company. Any unauthorized or otherwise improper use or disclosure of such Confidential Information could cause harm to the Company or other individuals or entities if revealed outside of the Company, if revealed internally to persons without a legitimate need to know, or if used for any purpose other than in furtherance of the Company's business.

Confidential Information includes, but is not limited to non-public information, whether or not patentable, developed, compiled, and/or utilized by the Company regarding or related to:

- Financial data and transactions;
- Personal healthcare information;
- Contracts;
- Lists of actual or potential customers, clients, and producers;
- Computer software, computer programs and all other types of computer technology;
- Methods and formulas;
- Marketing data;
- Sales techniques;
- Advertising;
- Traveling and canvassing methods;
- Brochures or instructions relating to the products, services or business of the Company or any if its actual or potential customers, clients, and producers;
- Credit information; and
- Personal and family information of a private nature.

Confidential Information also includes the Company's Trade Secrets, as defined by the Missouri Uniform Trade Secrets Act or any other applicable law.

The items set out above are not exhaustive, and Confidential Information can also include any other information which the Company may from time to time identify (verbally or in writing) to Associates as information which it wishes to preserve as confidential. Associates need to be aware that some information that seems quite ordinary may, in fact, be highly sensitive and confidential.

A-8

The Company intends to maintain the private and secret nature of any Confidential Information. The unauthorized or otherwise improper use and/or disclosure of Confidential Information may violate the rights of the Company, or its customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds or other individuals and entities with whom the Company does business, and in some circumstances such use or disclosure could give rise to civil or criminal liability. Associates should assume that information obtained from or through employment with the Company is confidential unless the information is known to the general public or an authorized Company official states the information is not confidential. A supervisor or other member of the leadership team should be contacted if there are any questions about how a particular piece of information should be handled, including whether or not it is considered confidential.

It is essential that Associates refrain from utilizing, discussing or otherwise disclosing Confidential Information, regardless whether it is conveyed in verbal, written or any other form, except as necessary to perform the functions of an assigned job or as otherwise authorized by an appropriate member of the leadership team. To the extent Confidential Information is set out in Company or third-party documents with which Associates are entrusted, Associates must not leave any such documents unattended or in public places, including public areas of the Company. In addition, to the extent Confidential Information is maintained in electronic devices provided by the Company, Associates must take appropriate measures to maintain the security of such devices and the information contained therein.

At the time of any termination of employment, Associates will be required to promptly deliver to the Company all documents or other materials in any form – electronic or otherwise – containing Confidential Information, including but not limited to manuals, sales materials, letters, notes, notebooks, reports, programs, customer lists, client lists, producer lists, rate charts, and all copies thereof, and all other materials of a secret or confidential nature related to the business of the Company or individuals and entities with whom the Company does business, which are in the Associate's possession or under the Associate's control.

### Non-Solicitation and Related Confidentiality Provisions

Associates who have access to Confidential Information and/or contacts with the Company's business relationships as the result of their employment with the Company further agree to comply with the Non-Solicitation Provisions of this Agreement.

The Company values each of our Associates and expends significant resources to train and acclimate them to perform their assigned duties. Associates also obtain Confidential Information regarding the Company and, frequently as part of their job, Associates are entrusted with contacts and relationships on behalf of the Company with individuals and entities with whom the Company does business and obtain Confidential Information regarding those individuals and entities.

Under the terms of this Agreement, the Company and the Associate agree that the Company has legitimate interests in: (a) the Company's investment in its Associates; (b) the promotion of workplace stability; (c) protection of goodwill; (d) protection of Confidential Information and business relationships; and (e) prevention of unfair competition by former Associates using contacts with the Company's employees, customers and insureds or with managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors,

A-9

insurance agencies or brokers, and their agents and insureds. The Associate further agrees he/she shall not engage in the following conduct during employment with the Company or for one year following the termination of employment with the Company for any reason unless the Associate receives the written consent of the Company's President:

    a.   The Associate shall not hire or recruit any employee of the Company, solicit any employee to leave employment with the Company, or otherwise interfere with the employment of any employee of the Company; and

    b.   For any person or entity with whom the Associate communicated on behalf of the Company during his/her employment as part of his/her work duties (including, without limitation, customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds), the Associate shall not communicate with such person or entity for the purpose of directly or indirectly soliciting business in competition with the Company or otherwise competing with the Company.

    c.   The Associate shall not use in any manner Confidential Information as described in this Agreement to compete with the Company or to assist any person or entity in competing with the Company.

## Consideration by Company

In exchange for the promises by the Associate under this Agreement, the Company agrees to provide the Associate with: (a) continued access to existing and new Confidential Information; (b) the opportunity for continuing and new contacts with the Company's customers and insureds and with managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, insurance agencies or brokers, and their agents and insureds; (c) continued employment; and (d) eligibility for potential future salary increases and promotions.

## General Provisions

The provisions of this Agreement are severable. That means that if any provisions are found invalid or unenforceable by a court or arbitrator, it shall not affect the application and enforcement of the rest of this Agreement. Also, whenever possible and consistent with the objectives of this Agreement, any otherwise invalid term should be reformed and enforced by a court or arbitrator.

The Company specifically agrees that nothing in this Agreement is intended to unlawfully interfere with an Associate's rights to collectively bargain, to engage in protected, concerted activity, or to exercise other rights protected under the National Labor Relations Act.

The Company and Associates further agree that the Company has legitimate interests to protect under the terms of this Agreement, a breach of this Agreement could cause irreparable damage to the Company, and the Company may seek equitable relief to enforce the obligations established under this Agreement in addition to any other remedies that might be available under applicable law, in the Courts of Jackson County, Missouri and in accordance with the provisions of the IPFS Corporation Arbitration Program.

A-10

The Company asks all Associates to indicate their agreement to this Agreement by signing the accompanying Acknowledgment and Agreement to Non-Disclosure, Confidentiality and Non-Solicitation Agreement. The Company believes this Agreement is good for both our organization and our employees, but if any Associate would like to negotiate or discuss a possible different agreement on any subject covered by this Agreement, the Associate should contact the Manager of Human Resources.

The obligations of Associates under this Agreement are in addition to the obligations that any Associate may have under any other confidentiality, non-solicitation, non-competition, restrictive covenant or similar agreement. This Agreement does not supersede or in any way lessen the obligations under any such other agreements and the obligations under any such other agreements remain in full force and effect. The terms of this Agreement can only be modified in a written document signed by both the Associate and the President of IPFS Corporation.

A-11

# Exhibit 2

# Acknowledgment and Agreement to IPFS Corporation
# Non-Disclosure, Confidentiality and Non-Solicitation Agreement

I acknowledge receipt of a copy of the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement* in the Addendum to the Associate Handbook effective November 10, 2015. I received an electronic copy of the Associate Handbook and Addendum via a hyperlink to the Company's Intranet Site. I understand that I may print a copy of the Handbook and Addendum from the Intranet Site or obtain a copy from Human Resources. The terms of the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement* are fully incorporated by reference into this Acknowledgment and Agreement.

I understand that by signing below, I indicate my agreement to the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement*. I also understand that any violation of the Agreement during my employment is grounds for disciplinary action, including termination of employment.

I understand that the Company encourages me to carefully read the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement*, and that I am welcome to contact the Manager of Human Resources if I have questions or would like to discuss or negotiate a possible different agreement on any subjects covered by the Agreement.

I further specifically understand and agree that, under the terms of the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement*, I shall not ever disclose Confidential Information as described in the Agreement except as necessary to perform the functions of my assigned job during my employment with the Company, and I shall not engage in any of the following conduct during my employment and for one year following the end of my employment for any reason unless I receive the written consent of the Company's President: (a) I shall not hire or recruit any employee of the Company, solicit any employee to leave employment with the Company, or otherwise interfere with the employment of any employee of the Company; (b) for any person or entity with whom I communicated on behalf of the Company during my employment as part of my work duties (including, without limitation, any customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds), I shall not communicate with any such person or entity for the purpose of directly or indirectly soliciting business in competition with the Company or otherwise competing with the Company; and (c) I shall not use in any manner Confidential Information as described in the Agreement to compete with the Company or to assist any person or entity in competing with the Company.

Agreed:

_[signature]_    11/17/2015

ASSOCIATE'S SIGNATURE    DATE

_[signature]_    Mike Gallagher, President
IPFS Corporation
On Behalf of IPFS Corporation and
Affiliated Persons and Entities

_Sue Ann Lopez_

ASSOCIATE'S NAME (please print)

A-3

# **Exhibit 3**

# IPFS Corporation Arbitration Program

Effective November 10, 2015, IPFS Corporation and affiliated entities (all referred to herein as the "Company") implemented and agreed to this *IPFS Corporation Arbitration Program* (referred to herein as the *"Program")*.

The Company believes that management and employees working together in good faith will result in few, if any, future legal disputes. However, because we believe this *Program* provides a fair and efficient process to resolve employment disputes related to legal rights, we ask all employees to indicate their agreement to the *Program* by signing the accompanying *Acknowledgment and Agreement to IPFS Corporation Arbitration Program*. The Company believes the *Program* is good for both our organization and our employees, but if any employee would like to negotiate or discuss a possible different agreement on dispute resolution, the employee should contact the Manager of Human Resources.

If any employee, former employee, or applicant (all referred to herein as "Associate") has a covered claim related to legally-protected rights, the claim shall be subject to independent and neutral arbitration under the terms of this *Program*. The *Program* also applies to claims by the Company against an Associate. It also applies to claims by or against an Associate who has ended employment with the Company.

This *Program* is a contractual commitment by the Company. The terms of the *Program* have been agreed to by the President of IPFS Corporation, on behalf of the Company. The terms of the *Program* cannot be changed unilaterally by the Company without the agreement of the affected Associate. The Program remains in effect after termination of employment or after transfer of an Associate to an affiliated entity.

## How Does the *Program* Work?

The Arbitration process will be administered by the American Arbitration Association (AAA), which is a not-for-profit organization with a long history and experience in the field of alternative dispute resolution. Arbitrations will be conducted under AAA's Employment Arbitration Rules, except as modified by this *Program*. The Employment Arbitration Rules are part of AAA's Employment Arbitration Rules and Mediation Procedures. The AAA Rules and Procedures are amended by AAA from time to time. The Rules and Procedures in effect at the time proceedings are initiated will apply, except as modified under this *Program*. Also, if an Associate does not agree to any modification by AAA of the Rules and Procedures after the implementation date of this *Program*, then the modification shall not apply. An Associate can always secure a copy of the current AAA Rules and Procedures and information about AAA by accessing the AAA website at www.adr.org, contacting AAA at 212 716-5800, or contacting Human Resources.

This *Program* does not require mediation, but if an Associate who files a claim under the *Program* wishes to mediate his/her claim, the Company agrees to participate in mediation. The Company further agrees to pay the fees of the mediator under AAA's mediation procedures or under any other mutually agreed upon procedure.

The Company also agrees to pay the Arbitrator fees and the costs charged by AAA, except that if the Associate initiates a claim, the Associate must pay an initial $100.00 fee to AAA, which is equivalent

Case 4:17-cv-01059-DGK   Document 5-2   Filed 02/23/18   Page 21 of 38

or less than what the Associate would be required to pay if he/she filed a lawsuit. (If an Associate is indigent, he/she may file the claim without a fee, pending a decision by the Arbitrator on a request for fee waiver based on the law and applicable AAA Rules.)

The Arbitrator shall be an independent, neutral and licensed attorney selected from a panel of at least three arbitrators provided by AAA, all of whom must satisfy the following qualifications: (1) former federal court judges and magistrates or former state court judges in appellate courts or trial courts of full general jurisdiction (which does not include municipal courts or "private judges"); or (2) lawyers who have practiced law and/or served as Arbitrators in the field of employment law for at least 15 years and are rated "AV" by Martindale-Hubbell. The AV rating is for lawyers considered to have reached the height of professional excellence and recognized for the highest levels of skill and integrity.

The Parties shall randomly decide who strikes first and then take turns alternately striking one name from the list of qualified arbitrators until there is only one name remaining. The remaining name shall be the Arbitrator. In any case, the Associate and the Company also may agree on a mutually acceptable Arbitrator, and agree to bypass the AAA arbitration selection and administration process.

The Arbitrator shall have the exclusive authority to resolve all disputes relating to the facts or the law. This includes the authority to grant summary disposition of claims prior to hearing and to grant all relief that a court of competent jurisdiction could grant based on the claims asserted. The Arbitrator must follow all applicable law. The Arbitrator shall decide the case in the same manner as a federal district court judge hearing the case without a jury, and shall apply the federal rules of evidence (except as modified in this *Program*). The Arbitrator shall issue a signed written award and decision stating the findings of material facts and conclusions of law that provides the basis for the decision. The Federal Arbitration Act governs the enforcement of this *Program* and proceedings under the *Program*, other than as modified by the *Program*. The Federal Arbitration Act applies because the Company's business involves interstate commerce. If the *Program* is found not enforceable under the Federal Arbitration Act, then applicable state law shall apply.

The arbitration hearing shall be held in the county of the Associate's principal place of employment or prospective employment, unless another location is agreed to by the parties. Prior to the hearing, the parties shall be entitled to discovery sufficient to fairly and adequately prosecute or defend claims as determined by the Arbitrator, taking into account the objective of an efficient, fair and prompt resolution of claims. Discovery shall include at a minimum the right to two depositions, ten interrogatories and ten document requests by each party. Associates, at their expense, may be represented by an attorney at arbitration. The following persons may be present at the hearing: the Arbitrator and any recorder of the hearing; the Associate and his/her spouse, attorneys, experts, and witnesses; and the Company's attorneys, management, human resource personnel, experts, and witnesses. No one else may be present without good cause determined by the Arbitrator. The arbitration and hearing shall be confidential, to the extent allowed under applicable law.

The parties shall provide lists of the names and addresses of witnesses and copies of exhibits to each other at least 30 days prior to the hearing and may supplement this information with additional rebuttal witnesses and exhibits up to 20 days prior to the hearing. The parties shall be entitled to file post-hearing briefs and proposed findings of fact and conclusions of law. The Arbitrator shall set a post-hearing briefing schedule under which the party with the burden of proof files first and the opposing party files second.

A-3

The Arbitration decision shall be binding on the Company and the Associate; however, the Company or the Associate may within 30 days after the decision file a reconsideration motion or other motion with the Arbitrator, who retains jurisdiction to consider and rule on any such motion. Additionally, the Company or the Associate may serve written notice of an Arbitration Appeal: (1) within 60 days after the Arbitration decision if no reconsideration or other motion is filed within 30 days after the Arbitration decision; or (2) if a reconsideration or other motion is filed within 30 days after the Arbitration decision, then within 30 days after a decision on the reconsideration motion or other motion. If a party serves notice of an Arbitration Appeal, the selection of an Arbitrator to decide the appeal shall be under the arbitration selection process in this *Program*. In an Arbitration Appeal, the Arbitrator shall review the Arbitration decision on the same legal grounds that a first level federal court of appeals would review the decision of a trial judge sitting without a jury. The Arbitrator in an Arbitration Appeal shall issue a written decision after considering written briefs and oral argument. If the Arbitration Appeal or any court review results in the direction of a new hearing or other further proceedings before an arbitrator, any party shall have the right to require that a new Arbitrator be selected under this *Program* to handle such new hearing or other further proceedings. The Arbitration decision and award shall not become final until the conclusion of the arbitration process under this *Program*. After the conclusion of the arbitration process, including the time period for an Arbitration Appeal and related proceedings, the Company or the Associate may file a legal action within 30 days to enforce, vacate, modify and/or appeal the final decision and award based on any available legal ground in the federal district court with jurisdiction over the county in which the hearing was held.

### How to Assert a Claim Under the *Program*

An Associate who wishes to assert a claim must submit a written request for arbitration by Certified Mail/Return Receipt Requested to the Manager of Human Resources, within the time period established by the applicable statute of limitations under the law. The written request should include supporting documentation and a statement of the facts, the nature of the claim, and the damages and/or other remedies sought. If the Company wishes to assert a claim against an Associate, it also must submit such a written request for arbitration with supporting documentation and statement to the Associate by Certified Mail/Return Receipt requested within the time period established by the applicable statute of limitations under the law. The claim is waived if the Associate or the Company fails to submit a timely and proper written request for arbitration, unless there are valid legal grounds to excuse the failure. After a request for arbitration, the parties shall cooperate on a joint submission of the claim to AAA, and the Company agrees to pay all AAA and arbitrator fees above $100.00. If the Associate asserts indigent status, the Company agrees to advance the initial $100.00 fee on behalf of the Associate, pending a decision by the Arbitrator. The Associate does not need to pay the $100.00 fee if only the Company asserts a claim.

All claims must be asserted, heard and resolved on a single Associate individual basis, unless otherwise agreed to by all parties. Claims against the Company by multiple Associates may not be joined together in the same arbitration. The Company also may not assert claims against multiple Associates in the same arbitration. An Associate may not assert claims as a class action or collective action on behalf of other Associates, either in court or under this *Program*. An Associate also may not have a claim asserted on his/her behalf by another person as a class representative or otherwise. This provision does not bar an individual associate from asserting a pattern or practice theory in support of his/her individual claim.

A-4

Any objection or challenge to the enforceability of this *Program*, or the enforceability of this *Program*'s prohibition on class action, collective action and multiple Associate claims, shall be determined by the courts and not by the Arbitrator. An arbitrator shall not have the authority to allow a class action, collective action or other multiple Associate claims to proceed in arbitration without a court order directing that result.

## Coverage of this *Program*

This *Program* covers all legal claims arising out of or relating to employment, application for employment, or termination of employment, except for claims specifically excluded under the terms of this *Program*. The claims covered by this *Program* include, but are not limited to, the following types of claims: wrongful discharge under statutory law or common law; employment discrimination, retaliation and sexual or other harassment based on federal, state or local statute, ordinance or governmental regulations; retaliatory discharge or other unlawful retaliatory action; overtime or other compensation disputes; leave of absence disputes; tortuous conduct; defamation; violation of public policy; breach of contract; and other statutory or common law claims. It includes claims by an Associate against the Company and claims by an Associate against any fellow employee, supervisor, or manager based on alleged conduct within the scope of employment by the fellow employee, supervisor, or manager. It includes claims based on a *Notice of Right to Sue* issued by a government agency. It also includes claims based on events that occurred prior to the effective date of this *Program* or based on events that occur following the termination of employment. This *Program* also applies to any claims by the Company against an Associate.

The only claims excluded from this *Program* are claims by an Associate for workers' compensation benefits, unemployment compensation benefits, ERISA-related benefits provided under a Company sponsored benefit plan, or claims filed with the National Labor Relations Board. Additionally, either the Associate or the Company may file a court action seeking provisional equitable remedies to the extent such remedies are available under the law, including but not limited to temporary or preliminary injunctive relief, either before the commencement of or during the arbitration process, to preserve the status quo or otherwise prevent damage or loss pending final resolution of the dispute pursuant to the terms of this *Program*. Also, this *Program* does not prevent or discourage an Associate from filing and pursuing an administrative proceeding before the Equal Employment Opportunity Commission or other federal, state or local administrative agency; however, if an Associate or the Company chooses to pursue a legal claim in addition to and/or following completion of such administrative proceedings, or if there is some other legal proceeding related to the claim following completion of the administrative proceedings, the claim then shall be subject to the terms of this *Program*.

## Contractual Nature of this *Program*

This *Program* creates a contract that binds the Company and each Associate to arbitrate employment-related legal claims. This *Program* does not in any way modify the employment-at-will status of any Associate.

The provisions of this *Program* are severable. That means that if any provisions are found invalid or unenforceable by a court, it shall not affect the application and enforcement of the rest of this *Program*. Also, whenever possible and consistent with the objective of this *Program* to arbitrate all covered claims, any otherwise invalid term should be reformed and enforced by a court.

A-5

If a lawsuit is filed prior to arbitration, any action by an Associate or the Company related to removal of the lawsuit to federal court and/or remand of the lawsuit to state court prior to a motion to compel arbitration shall not be a waiver by either the Associate or the Company of any rights under this *Program*. Also, the *Program* is not intended to unlawfully interfere with an Associate's rights to collectively bargain, to engage in protected, concerted activity, or to exercise other rights protected under the National Labor Relations Act, and an Associate will not be subject to disciplinary action of any kind for opposing any provisions of this *Program*.

THIS *IPFS CORPORATION ARBITRATION PROGRAM* IS A CONTRACT THAT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES AND WHICH WAIVES THE RIGHT TO A JUDGE OR JURY TRIAL.

A-6

# Exhibit 4

# Acknowledgment and Agreement to
# IPFS Corporation Arbitration Program

I hereby acknowledge receipt of a copy of the *IPFS Corporation Arbitration Program* in the Addendum to the Associate Handbook, effective November 10, 2015. I received an electronic copy of the Associate Handbook and Addendum via a hyperlink to the Company's Intranet Site. I understand that I may print a copy of the Handbook and Addendum from the Intranet Site or obtain a copy from Human Resources. The terms of the *IPFS Corporation Arbitration Program* are fully incorporated by reference into this Acknowledgment and Agreement.

The *IPFS Corporation Arbitration Program* is a contractual commitment by IPFS Corporation and affiliated entities (all referred to as the "Company"). It has been voluntarily agreed to by the President of IPFS Corporation on behalf of the Company. I understand that by signing below, I also indicate my voluntary agreement to the *IPFS Corporation Arbitration Program*.

I understand the Company considers the *IPFS Corporation Arbitration Program* to be a fair and efficient process to resolve employment disputes related to legal rights through arbitration instead of a lawsuit. I understand the *IPFS Corporation Arbitration Program* is a binding contract to waive the right to judge or jury trial, to waive the right to participate in a class action or collective action, and to resolve employment-related legal claims under the terms of the *IPFS Corporation Arbitration Program* instead of through a lawsuit. I understand the *IPFS Corporation Arbitration Program* also applies to any claims by the Company against me.

I understand that the Company encourages me to carefully read the *IPFS Corporation Arbitration Program*, and that I am welcome to contact the Manager of Human Resources if I have questions or would like to discuss or negotiate a possible different agreement on dispute resolution.

THE *IPFS CORPORATION ARBITRATION PROGRAM* IS A CONTRACT THAT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES AND WHICH WAIVES THE RIGHT TO A JUDGE OR JURY TRIAL.

Agreed:

_____  11/17/2015
ASSOCIATE'S SIGNATURE     DATE

Sue Ann Lopez
_____
ASSOCIATE'S NAME  (please print)

_____
Mike Gallagher, President
IPFS Corporation
On Behalf of IPFS Corporation and
Affiliated Persons and Entities

A-2

# Exhibit 5

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| IPFS CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 17-1059 |
| | ) | |
| SUE ANN LOPEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT FOR PRELIMINARY INJUNCTIVE RELIEF

Plaintiff IPFS Corporation ("IPFS"), by and through its attorneys, for its Complaint for Injunctive Relief against Defendant Sue Ann Lopez ("Defendant"), alleges as follows:

### PARTIES

1.      IPFS is a corporation organized and existing under the laws of the State of Missouri with its principal place of business at 1055 Broadway Boulevard, Kansas City, Missouri 64105.

2.      Defendant is a former sales executive of IPFS and is currently working for US Premium Finance ("US Premium"), a competitor of IPFS.

3.      Defendant, on information and belief, is a resident of Montgomery County, Texas.  However, while employed by IPFS, Defendant traveled to Kansas City, Missouri for annual training.

### JURISDICTION AND VENUE

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this dispute is between citizens of different states and the amount in controversy, in good faith, exceeds the sum of $75,000.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in and IPFS is a citizen of the State of Missouri.

6.     One contract at issue in this litigation was accepted in Kansas City, Missouri and contains the following forum-selection clause in the event of a dispute between the parties:

> Jurisdiction and Choice of Law. In the event of a dispute concerning this Agreement which cannot be resolved by mutual agreement, the **parties shall be required** to pursue their rights in any court of competent jurisdiction sitting *in Kansas City, Missouri,* which shall be the **exclusive mandatory venue** for any such disputes. This Agreement will be governed by Missouri law, without regard to its choice of law rules.

*See* Confidentiality, Non-Disclosure, Non-Competition and Non-Solicitation Agreement (hereafter, "Non-Compete Agreement," and attached hereto as **Exhibit A**) (emphasis added).

## FACTS COMMON TO ALL COUNTS

7.     IPFS is a premium financing firm providing short term loans for businesses and individuals to use for property and casualty insurance coverage.  IPFS offers loans that enable insurance policy holders to spread payments over a period of time instead of paying the entire premium upfront.  Insurance agencies and agents partner with IPFS to offer financing to policyholders and clients.

8.     Defendant was employed by IPFS for approximately 2.5 years.

9.     As a Sales Executive, her duties and responsibilities involved the selling and marketing of IPFS's premium financing products and services, facilitating quotes for loans, and managing IPFS customer relations with insurance agents who refer their clients to IPFS for their premium financing needs.

10.     Defendant worked out of IPFS's Houston, Texas office and her sales territory included parts of the Houston area, among others.

2

11.     Defendant began her employment with IPFS in June 2015 and, on or about that time, she entered into the Non-Compete Agreement.

12.     In consideration for entering into the Non-Compete Agreement with IPFS, in addition to the commencement of her at-will employment, IPFS paid Defendant an additional $5,000 for her various promises.

13.     A few months later, on or about November 17, 2015, Defendant received a new handbook as part of IPFS's rollout of updated policies and procedures.

14.     One of the addendums to the employee handbook is the IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement (the "Non-Solicitation Agreement").  A true and accurate copy of the Non-Solicitation Agreement is attached hereto as **Exhibit B**.

15.     The Non-Solicitation Agreement provides: "[IPFS] asks all Associates to indicate their agreement to this Agreement by signing the accompanying Acknowledgement and Agreement to Non-Disclosure, Confidentiality and Non-Solicitation Agreement."  *Id.*

16.     On or about November 17, 2015, Defendant accepted the Non-Solicitation Agreement by executing the Acknowledgement and Agreement to Non-Disclosure, Confidentiality and Non-Solicitation Agreement ("Acknowledgement").  A true and correct copy of Defendant's signed Acknowledgement is attached hereto as **Exhibit C.**

17.     The relevant provisions of the Acknowledgement and Non-Solicitation Agreement state the following:

> I shall not engage in any of the following conduct during my employment and for one year following the end of my employment . . .
>
> (a) I shall not hire or recruit any employee of [IPFS], solicit any employee to leave employment with [IPFS], or otherwise interfere with the employment of any employee of [IPFS];

3

(b) for any person or entity with whom I communicated on behalf of [IPFS] during my employment as part of my work duties (including, without limitation, any customers, insureds, managing general agents, general agents, insurance agencies or brokers, and their agents and insureds), I shall not communicate with any such person or entity for the purpose of directly or indirectly soliciting business in competition with [IPFS] or otherwise competing with [IPFS]; and

(c) I shall not use in any manner Confidential Information as described in the Agreement to compete with [IPFS] or to assist any person or entity in competing with [IPFS].

*See* **Exhibits B** and **C** (substantially similar terms in both Agreement and Acknowledgement).

18.     Further, the Non-Solicitation Agreement provides:

The obligations of Associates under this Agreement are in addition to the obligation that any Associate may have under any other confidentiality, non-solicitation, non-competition, restrictive covenant or similar agreement. This Agreement does not supersede or in any way lessen the obligation under any such agreement and the obligation under any such agreements remain in full force and effect.

*See* Exhibit B, p. 4.

19.     IPFS assigned specific and identifiable customer accounts to Defendant and she communicated with these persons and entities as part of her IPFS work duties. Subject to a Protective Order, IPFS will provide Defendant with a proposed "Restricted List" that identifies the current customers for whom Defendant was responsible. As part of her duties, Defendant was charged with selling, as well as building and nurturing goodwill relationships of the persons and entities identified on the Restricted List.

20.     Another addendum to the employee handbook is the Acknowledgement and Agreement to IPFS Corporation Arbitration Program ("Arbitration Agreement"). A true and correct copy of the Arbitration Agreement is attached hereto as **Exhibit D**, and a true and correct copy of Defendant's signed Acknowledgement of the Arbitration Agreement is attached hereto as **Exhibit E.**

4

21.     The Arbitration Agreement provides: "[E]ither the Associate or [IPFS] may file a court action seeking provisional equitable remedies to the extent such remedies are available under the law, including but not limited to temporary or preliminary injunctive relief, either before the commencement of or during the arbitration process, to preserve the status quo or otherwise prevent damage or loss pending final resolution of the dispute pursuant to the terms of the *[IPFS Corporation Arbitration] Program*." *See* Exhibit D, p. 4 (emphasis in original).

22.     On or about November 1, 2017, Defendant resigned from her employment at IPFS in order to accept employment with IPFS's competitor, US Premium.

23.     Shortly thereafter, other IPFS sales executives learned from their customers that Defendant was soliciting on behalf of US Premium.

24.     On November 13, 2017, Defendant filed suit in Harris County, Texas for a declaratory judgment as to the enforceability and interpretation of the Non-Solicitation Agreement. *See* **Exhibit F**.

25.     In her Petition, Defendant concedes that the Non-Solicitation Agreement "prohibits [her] from having any future contact with individuals or entities with whom she had contact while she was working for IPFS," and prays for an "order declaring that the Non-Solicitation Agreement is overbroad and unenforceable," or alternatively, for an "order declaring that [she] would not violate the Non-Solicitation Agreement by communicating with clients or prospective clients who contact her or by acceding business from such individuals."

26.     IPFS will file a Motion to Dismiss in Harris County, Texas because Defendant's Petition runs contrary to the Non-Compete Agreement's forum selection clause, as well as the parties' Arbitration Agreement.

28543481v3

## COUNT I - BREACH OF CONTRACT

27.     IPFS repeats and realleges Paragraphs 1 through 26 as if fully set forth herein.

28.     IPFS and Defendant entered into binding and enforceable contracts in the form of the Non-Competition Agreement and the Non-Solicitation Agreement.

29.     The Agreements were supported by valid consideration because Defendant accepted the terms in exchange for $5,000 and continued employment with IPFS.

30.     IPFS has fully complied with the Agreements.

31.     Defendant has violated and continues to violate the provisions of the Agreements by soliciting IPFS's customers for premium financing services for Defendant's new employer, US Premium.

32.     As a direct and proximate result of these breaches of the Agreements, IPFS has suffered damages  and could suffer more damage by the loss of business and the loss of customer goodwill in an amount in excess of $75,000, exclusive of interest and costs.

WHEREFORE, Plaintiff IPFS Corporation respectfully prays that this Court order a Preliminary Injunction prohibiting Defendant Sue Ann Lopez from communicating with any person or entity on the Restricted List for the purpose of directly or indirectly soliciting business in competition with IPFS or otherwise competing with IPFS; and for such other and further equitable relief as is just and proper under the circumstances.

6

Date:  December 22, 2017                    Respectfully submitted,

                                           LATHROP GAGE LLP


                                   By:     /s/ *Michael J. Abrams*
                                           Michael J. Abrams (42196)
                                           Kate O'Hara Gasper (61198)
                                           2345 Grand Boulevard, Suite 2200
                                           Kansas City, Missouri  64108-2618
                                           Telephone:  816.292.2000
                                           Telecopier:  816.292.2001
                                           mabrams@lathropgage.com
                                           kgasper@lathropgage.com

                                           ATTORNEYS FOR PLAINTIFF

28543481v3

# Exhibit 6

CAUSE NO. 2017-76204

| | | |
|---|---|---|
| SUE ANN LOPEZ, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| IPFS CORPORATION, | § | |
| | § | |
| Defendant. | § | 152ND JUDICIAL DISTRICT |

## <u>DECLARATION OF HEATHER MORRISON KEELING</u>

I, Heather Morrison Keeling, make this declaration pursuant to Tex. Civ. Prac. & Rem. Code § 132.001 under penalty of perjury.

I am the Senior Human Resources Manager for IPFS Corporation. As a result, I have personal knowledge of the facts stated herein.

Attached as Exhibit 1 to Defendant IPFS Corporation's Motion to Dismiss Based on Forum Selection Clause and, in the Alternative, Plea in Abatement and to Compel Arbitration (the "Motion") is a true and correct copy of the IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement (the "Non-Solicitation Agreement") that was included in the November 2015 rollout of IPFS's new employee handbook.

Attached as Exhibit 2 to the Motion is a true and correct copy of Sue Ann Lopez's signed Acknowledgement of the Non-Solicitation Agreement. The Acknowledgment of the Non-Solicitation Agreement was signed by Sue Ann Lopez on or about November 17, 2015, and signed by IPFS President, Mike Gallagher, in Kansas City, Missouri. The original copy of Exhibit 2 is maintained in IPFS's Human Resources office in Kansas City, Missouri.

Attached as Exhibit 3 to the Motion is a true and correct copy of the Agreement to IPFS Corporation Arbitration Program ("Arbitration Agreement") that was included in the November 2015 rollout of IPFS's new employee handbook.

Attached as Exhibit 4 to the Motion is a true and correct copy of Sue Ann Lopez's signed Acknowledgement of the Arbitration Agreement. The Acknowledgment of the Arbitration Agreement was signed by Sue Ann Lopez on or about November 17, 2015, and signed by IPFS President, Mike Gallagher, in Kansas City, Missouri. The original

copy of Exhibit 4 is maintained in IPFS's Human Resources office in Kansas City, Missouri.

Attached as Exhibit 5 to the Motion is a true and correct copy of the Complaint filed by IPFS Corporation in in the U.S. District Court for the Western District of Missouri.

My name is Heather Morrison Keeling, my date of birth is January 8, 1974 and my business address is 1055 Broadway, Kansas City, Missouri 64105. I declare under penalty of perjury that the foregoing is true and correct.

Executed in ___Jackson___ County, State of ___Missouri___ , on the 21st day of December 2017.

Heather Morrison Keeling

28566348v1