# EXHIBIT 3

CAUSE NO. 2017-76204

| | | |
|---|---|---|
| SUE ANN LOPEZ | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff; | § | |
| | § | |
| vs. | § | HARRIS COUNTY, T E X A S |
| | § | |
| IPFS CORPORATION | § | |
| | § | |
| Defendants. | § | 152nd JUDICIAL DISTRICT |

---

FIRST AMENDED ORIGINAL PETITION FOR DECLARATORY AND
EQUITABLE RELIEF

---

COMES NOW, Sue Ann Lopez, and makes this her First Amended Original Petition for Declaratory and Equitable Relief (the "Petition"), and would show as follows:

**PARTIES**

1.     Plaintiff is a resident of Montgomery County, Texas and was formerly employed by Defendant IPFS Corporation ("IPFS") in Harris County, Texas, which was her principal place of employment.

2.     IPFS is a foreign corporation doing business in Harris County, Texas and has wholly appeared.

## JURISDICTION, VENUE and DISCOVERY PLAN

3.     This Court has venue as all or a substantial part of the cause of action accrued in Harris County, Texas, Texas Civil Practice and Remedies Code §15.002(a)(1).

4.     This Court has personal jurisdiction over IPFS because it has a business location and regularly conducts business in Houston, Texas.

5.     The Plaintiff seeks non-monetary relief only, with the exception of attorney's fees and costs in an amount less than $75,000.00.  For the purpose of Texas Rule of Civil Procedure 47, Plaintiff seeks monetary relief of $100,000.00 or less.

6.     Plaintiff seeks the application of Discovery Level 2 under Texas Rule of Civil Procedure 190.3.

## FACTUAL ALLEGATIONS

7.      IPFS is engaged in the competitive business of financing commercial and personal lines insurance premiums.   In this industry, companies like IPFS provide short term loans for business and individual insureds to pay premiums associated with insurance coverage. These premium finance loans allow the insurance policy holder to spread payments over the course of the policy instead of paying the entire premium up front.

8.     From July 6, 2015 to November 1, 2017, Plaintiff was employed by IPFS as a sales representative in the position of "Sales Executive" with a limited territory in the western half of Harris County and to Victoria, Texas.  She reported to the IPFS office in Houston out of which she was based.  In that capacity, Plaintiff was responsible for marketing and selling IPFS's insurance premium financing products to independent

insurance agents and brokers primarily in the Houston area west of I-45 to Katy, Texas.

9.      As is typical in the premium finance industry, the agents and brokers with whom Plaintiff dealt while at IPFS were under no contractual or other obligation to work exclusively with IPFS.   To the contrary, most, if not all, routinely did business simultaneously with multiple premium finance companies. This is but one example of the significantly competitive environment involving insurance premium finance.

10.     On or about June 15, 2015, IPFS provided to the Plaintiff a Confidentiality, Non-Disclosure, Non-Competition and Non-Solicitation Agreement (the "First Non-Solicitation Agreement") (Exhibit A).  While signed by the Plaintiff, it was not counter-signed by IPFS, or at least IPFS did not return to the Plaintiff a signed copy.

11.     On or about November 10, 2015, IPFS issued to Plaintiff the IPFS policies and procedures, including an employee handbook and addenda.

12.     One of the addenda to the employee handbook is the IPFS Corporation Non-disclosure, Confidentiality and Non-Solicitation Agreement (the "Second Non-Solicitation Agreement").   A true and correct copy of the Second Non-Solicitation Agreement is attached hereto as Exhibit B; this Second Non-Solicitation Agreement was signed by the parties in a separate acknowledgment.

13.     This Second Non-Solicitation Agreement regarded the handling of supposedly confidential information, and purported to prohibit Ms. Lopez (along with her fellow IPFS employees) from competing with IPFS in the sale of insurance premium financing after the end of her employment with IPFS.  Ms. Lopez, as she was required to do as part of her employment, acknowledged and agreed to the Second Non-Solicitation

Agreement on November 17, 2015.  Unlike the First Non-Solicitation Agreement, both Ms. Lopez and Mr. Gallagher on behalf of IPFS signed the Second Non-Solicitation Agreement.

14.     Also on or about November 10, 2015, IPFS near-contemporaneously issued an IPFS Corporation Arbitration Program attached as Exhibit C, (the "Arbitration Agreement").

## Forum Selection Provisions – Harris County Correct Forum

15.     The agreements that the Defendant alleges apply in this matter show that the District Courts of Harris County, Texas are the exclusive, or alternatively a permissive, forum for equitable[1] and *sui generis*[2] disputes between the parties.

16.     The forum selection clause of the First Non-Solicitation Agreement has been superseded by the subsequent agreements.

17.     The First Non-Solicitation Agreement has a mandatory and exclusive forum selection clause listing that any relief sought by the parties would occur in the Courts of Kansas City, Missouri (Exhibit A, Paragraph 10).  That section of the First Non-Solicitation Agreement says, "In the event of a dispute concerning this Agreement . . . **the parties shall be required** to pursue their rights in any court . . . in Kansas City, Missouri, which shall be the **exclusive mandatory venue** for any such disputes."  *Id*.

---

[1] Some cases say that Texas recognizes that a request for declaratory judgment is seeking a form of equitable relief.  *See Securtec Inc. v. County of Gregg*, 106 S.W.3d 803, 814 (Tex. App. – Texarkana, 2003) (noting that a declaratory judgment is "another form of equitable relief").

[2] Other cases say that a request for a declaratory judgment is "neither legal nor equitable, but instead, *sui generis*", *See*, *Feldman v. KPMG LLP*, 438 S.W.3d 678 at 683 (Tex. App. – Houston [1st Dist.], 2014).

(emphasis added). The First Non-Solicitation Agreement also stated that it could be amended by "written agreement signed by all of the parties hereto," *i.e.*, Ms. Lopez and IPFS. (Exhibit A, Paragraph 15 - "Miscellaneous").

18. The Second Non-Solicitation Agreement only addresses equitable relief sought by the Company and states that the Company "may" bring a case for equitable relief against the Plaintiff in any court in Jackson County, Missouri (in which Kansas City, Missouri is located) (Exhibit B, Page A-10, last paragraph). The Second Non-Solicitation Agreement also includes permissive (non-exclusive) forum selection language, and of limited scope:

> The Company [*i.e.*, IPFS] may seek equitable relief . . . in addition to any other remedies that might be available under applicable law, in the Courts of Jackson County, Missouri and in accordance with the provisions of the IPFS Corporation Arbitration Program.

Second Non-Solicitation Agreement at p. A-10. The Second Non-Solicitation Agreement does not specify any forum in which **_employees_** or **_ex-employees_**, like Ms. Lopez, may or must bring claims.

19. The Arbitration Agreement specifically addresses that legal claims that are covered must be brought in arbitration, but that equitable claims by and between the Plaintiff and IPFS are to be brought outside of arbitration and in court (Exhibit C, Page A-5, Second Paragraph under heading "Coverage of this Program"). More specifically, the Arbitration Agreement says that it "covers all **legal** claims arising out of or related to employment, application for employment, or termination of employment[.]" *Id.* [Emphasis Added]. It further states that:

either the Associate [*i.e.*, an employee or former employee, like Ms. Lopez] or the Company may file a court action seeking provisional equitable remedies to the extent such remedies are available under the law . . . either before the commencement of or during the arbitration process[.]

20.     The Arbitration Agreement also states that, as to forum, "…the arbitration hearing shall be held in the county of the Associate's [Plaintiff's] principal place of employment or prospective employment, unless another location is agreed to by the parties", (Exhibit C, Page A-3, Second Paragraph from the bottom of the page). The Plaintiff's principal place of employment was and is Harris County, Texas.

21.     Under the contractual construction doctrine of *Inclusio Unis Est Exclusio Alterius* (i.e., the purposeful inclusion of a specific term in a writing implies the purposeful  exclusion of other terms[3]), the exclusion of a forum for equitable relief for the Plaintiff or *sui generis* relief for either the Plaintiff of IPFS indicates that the intent of the parties was that Kansas City and Jackson County, Missouri be excluded as a proper forum for the Plaintiff's request for either equitable or *sui generis* relief, *see generally*, *In Re Estate of Anderegg*, 360 S.W. 3d 677, 681 (Tex.App. – El Paso, 2012) no writ.  As such, the Plaintiff's choice of Harris County as forum is allowed by the attached documents.

---

[3] *CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.,* 734 S.W.2d 653, 655–56 (Tex. 1987) (A settlement agreement released claims and causes of action arising out of two documents but did not mention a third; "this silence raises an inference that the parties did not intend to preclude the [third] …draft… causes of action by the settlement agreement."), citing *Morrow v. Morgan*, 48 Tex. 304, 308 (1877); *Phillips Petroleum Co. v. Gillman*, 593 S.W.2d 152, 154 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

22.     In addition, alternatively, taking the documents together, it is clear from the latter documents, including but not limited to the statement that the Company "may", but is not required to, seek equitable relief in Jackson County, Missouri, (Exhibit B, Page A-10, last paragraph), and that the parties contemplate that legal claims between them would be arbitrated in Harris County, Texas, (Exhibit C, Page A-3, Second Paragraph from the bottom of the page), that Harris County was a possible intended forum of equitable and *sui generis* disputes between the parties.

23.     The alleged agreements are silent as to where *sui generis* relief can be obtained.  In the absence of any forum selection clause as to *sui generis* relief, this case has been properly brought in the forum of Harris County, Texas.

24.     As to contract interpretation, the documents were all drafted by IPFS and therefore ambiguities are construed against the draftsman, IPFS.

25.     In addition, these are adhesion contracts, with which the Plaintiff had no power to bargain; as such, ambiguities are construed against the party with the superior bargaining power, IPFS.

26.   In summary, the agreements state as follows as to forum selection:

| | June 15, 2015 Confidentiality, Non-Disclosure and Non-Solicitation Agreement (Exhibit A) | November 10, 2015 IPS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement (Exhibit B) | November 10, 2015 Corporation Arbitration Program (Exhibit C) |
|---|---|---|---|
| Forum Selection | **Legal and Equitable Relief of both Parties:**<br><br>10. Jurisdiction …. In the event of a dispute concerning this Agreement which cannot be resolved by mutual agreement, the parties shall be required to pursue their rights in any court of competent jurisdiction sitting in Kansas City, Missouri, which shall be the exclusive mandatory venue for any such disputes.<br><br>***Sui Generis* Relief:**<br><br>Not addressed. | **Equitable Relief of the Company Only:**<br><br>Company may seek equitable relief to enforce the obligations established under this Agreement in addition to any other remedies that might be available under applicable law, in the Courts of Jackson County, Missouri.<br><br>***Sui Generis* Relief:**<br><br>Not addressed. | **Legal Relief of the Parties:**<br><br>The arbitration hearing shall be held in the county of the Associate's principal place of employment or prospective employment, unless another location is agreed to by the parties.<br><br>**Equitable Relief of the Parties:**<br><br>Additionally, either the Associate or the Company may file a court action seeking provisional equitable remedies to the extent such remedies are available under the law, including but not limited to temporary or preliminary injunctive relief, |

| | | | either before the commencement of or during the arbitration process, to preserve the status quo or otherwise prevent damage or loss pending final resolution of the dispute pursuant to the terms of this *Program*. <br><br> ***Sui Generis* Relief:** <br><br> Not addressed. |
|---|---|---|---|

## **Non-Solicitation Provisions**

27.     In the Second Non-Solicitation Agreement, IPFS "asks all Associates to indicate their agreement to this Agreement by signing the accompanying Acknowledgment and Agreement to Non-Disclosure, Confidentiality and Non-Solicitation Agreement."

28.     On or about November 17, 2015, Plaintiff signed the acknowledgment "Exhibit D", (the "Acknowledgement") which in and of itself contains other non-solicitation provisions.

29.     Although the title suggests the Second Non-Solicitation Agreement document consists of a "Non-Solicitation Agreement," it is essentially a non-compete, or some vague form of non-piracy agreement.   The Second Non-Solicitation Agreement provides, *inter alia*, as follows:

9

I shall not engage in any of the following conduct during my employment and for one year following the end of my employment for any reason unless I receive written consent of the Company's President: (1) I shall not hire or recruit any employee of the Company, solicit any employee to leave employment with the Company, or otherwise interfere with the employment of any employee of the Company; (b) for any person or entity with whom I communicated on behalf of the Company during my employment as part of my work duties (including, without limitation, any customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds), I shall not communicate with any such person or entity for the purpose of directly or indirectly soliciting business in competition with the Company or otherwise competing with the Company; and (c) I shall not use in any manner Confidential Information as described in the Agreement to compete with the Company or to assist any person or entity in competing with the Company.

30. The Second Non-Solicitation Agreement does not contain any geographic limitation and purports to restrict Plaintiff from communicating with any individual or entity with which she had any contact while working for IPFS, regardless of whether IPFS maintained an active customer relationship or had a protectable interest in connection with those individuals or entities.

31. Moreover, the Second Non-Solicitation Agreement contains no definition of the type of conduct which would constitute directly or indirectly "soliciting" in violation of the agreement.

32. During the course of her employment, IPFS, through the actions of Plaintiff's immediate supervisor and others, created an abusive, overbearing and intimidating working environment which included, but was not limited to the following

circumstances and misconduct (i) Plaintiff's superiors condoned and participated in the excessive use of alcohol at company-related events, and on at least one occasion such alcohol abuse led to physical violence by Plaintiff's immediate supervisor toward persons and property, wherein Plaintiff was forced to pay for property damage to conceal the incident; (ii) Plaintiff was required to purchase alcoholic beverages for supervisors at company events and outings on her company-issued credit card, even though Plaintiff does not drink, so that her immediate supervisor could conceal his alcohol abuse from the company; (iii) Plaintiff (who suffers from Lupus) was repeatedly asked by her immediate supervisor to share her prescription medication with him for his recreational use; and, (iv) Plaintiff was forced to pay for her supervisor's personal and business expenses on her company-issued credit card, decreasing her profitability to the company while inflating her supervisor's profitability.

33.     IPFS ignored Plaintiff's complaints about the abusive and intimidating working environment. IPFS added more sales personnel to Plaintiff's territory and reduced the scope of her work.  Accordingly, Plaintiff was constructively terminated from her employment because of these working conditions.  Plaintiff notes that her claims for same are not the subject of this suit.

34.     A Federal Discrimination Charge has been filed with the Equal Employment Opportunity Commission and the Texas Workforce Commission.

35.     Thus, while Plaintiff is not seeking monetary relief for her constructive termination in this action, the facts alleged herein are nonetheless relevant to the Court's consideration of the appropriate scope of the restrictive covenants in any Non-Solicitation

Agreement, the reasonableness of enforcing any Non-Solicitation Agreement as against Plaintiff, and the failure of the consideration underlying the Non-Solicitation Agreements.

36.     On the day the Plaintiff left her employ, the Defendant demanded Plaintiff disclose where she would be working going forward.  Plaintiff was told by IPFS management that if she intended to work for US Premium Finance ("USPF"), IPFS would sue her for violation of a Non-Solicitation Agreement.  After this suit was filed, IPFS has followed through on the threat and on December 22, 2017, filed a bare-bones suit allegedly seeking injunctive relief.[4]

37.     Plaintiff was aware that IPFS had sued another former IPFS employee, Cynthia Scott, after she left the company and joined USPF.

38.     IPFS is litigious, particularly as against former female employees.  Plaintiff expected IPFS to carry out its threat of litigation if she took the position with USPF.

39.     Nevertheless, needing a position of gainful employment, on or about November 6, 2017, Plaintiff began working for USPF, a premium finance company doing business in, among other places, Houston, Texas.

40.     Following her decision to leave IPFS and work for USPF, Plaintiff received verbal threats from IPFS stating that it was likely to initiate legal action against her

---

[4] This suit was first filed and has precedence.  The Defendant's subsequent red herring suit, attached to the Defendant's Motion to Dismiss as Exhibit 5, is a half-hearted attempt at stating a cognizable claim.  It was filed for no reason other than to attempt to say this Court that another court may have the ability to hear these matters.  Note that the Defendant's other suit was filed on December 22, 2017, the same day of their appearance in this case.  The Defendant's Missouri suit is or soon will be the subject of a motion to dismiss in that court.

12

should she have any contact with any person or entity with whom she communicated during her employment with IPFS.

41.     IPFS has repeatedly connected with Plaintiff's social media accounts to track her potential new employment in an almost stalking type action.

42.     Plaintiff is aware that in similar circumstances, where an individual has resigned from IPFS to seek employment with a competitor company, IPFS has followed through with its threats of litigation.

43.     IPFS has threatened to utilize the excessively overbroad language in the Non-Solicitation Agreements to preclude her from working in her chosen industry.

44.     A justiciable controversy exists because IPFS had threatened to utilize (and has now apparently, has utilized) the Non-Solicitation Agreements to bring legal action against Plaintiff to unlawfully curtail or limit her ability to provide employment services to USPF, her new employer.

## CAUSE OF ACTION

### Declaratory Judgment – Enforceability of Non-Solicitation Agreements
### TEXAS UNIFORM DECLARATORY JUDGMENTS ACT
### TEX. CIV. PRAC. & REM. CODE §§ 37.001-37.011

45.     By their terms, the Non-Solicitation Agreements purport to prohibit Plaintiff from having any future contact with individuals or entities with whom she had contact while she was working for IPFS.

46.     The Non-Solicitation Agreements do not contain any limitation on its geographical applicability, and purport to restrict Plaintiff's communications with anyone with whom she communicated while at IPFS.

47.     The Non-Solicitation Agreements lack a geographical limitation and are overly broad, rendering them unenforceable as a matter of law.

48.     As a result, Plaintiff seeks a declaration that the Non-Solicitation Agreements are overbroad and unenforceable.

### Declaratory Judgment – Future Conduct
### TEXAS UNIFORM DECLARATORY JUDGMENTS ACT
### TEX. CIV. PRAC. & REM. CODE §§ 37.001-37.011

49.     Under the terms of the Non-Solicitation Agreements, Plaintiff is prohibited from communicating with any person or entity with whom she had communications while working for IPFS for the purpose of directly or indirectly soliciting business in competition with IPFS.

50.     To the extent that this provision is valid and enforceable, Plaintiff seeks a declaration that she would not violate the terms of any Non-Solicitation Agreement by communicating with clients or prospective clients who initiate contact with her.

51.     Plaintiff further seeks a declaration that she would not violate the terms of any Non-Solicitation Agreement if she accepts business from an individual or entity who initiates contact with her, regardless of that individual or entity's prior relationship with IPFS.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief:

A.      Entry of judgment in the Plaintiff's favor on all claims;

B.      An order declaring that the Non-Solicitation Agreements are overbroad and unenforceable;

C.      An order declaring that Plaintiff would not violate any Non-Solicitation Agreement by communicating with clients or prospective clients who contact her or by accepting business from such individuals or entities;

D.      Awarding Plaintiffs' costs and attorneys' fees pursuant to Texas Business and Commerce Code §15.51, Texas Civil Practice and Remedies Code §§37.009 and 134A005 and any other applicable statute, rule or principle of common law; and

E.      For such other and any further relief this Court deems just and proper.

Respectfully submitted,

/s/ Charles H. Peckham
_____

Charles H. Peckham
TBN: 15704900
cpeckham@pmlaw-us.com

Mary A. Martin
TBN: 00797280
mmartin@pmlaw-us.com

PECKHAM MARTIN, PLLC
Two Bering Park
800 Bering Drive, Suite 220
Houston, Texas 77057
(713) 574-9044
(713) 493-2255 – facsimile

PRO HAC VICE:

Brian W. LaCorte
LaCorteB@ballardspahr.com

John G. Kerkorian
KerkorianJ@ballardspahr.com

BALLARD SPAHR, LLP
1 East Washington Street, Suite 2300
Phoenix, Arizona 85004-2555
(602) 798-5449
(602) 798-5595 – facsimile

16

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was forwarded to the following on this the 8th day of January 2018 via electronic service:

David W. Jones
djones@beckredden.com
BECK REDDEN, LLP
1221 McKinney Street, Suite 4500
Houston, Texas  77010

Michael J. Adams
mabrams@lathropgage.com
LATHROP GAGE, LLP
2345 Grand Blvd, Suite 2200
Kansas City, Missouri  64108

/s/ Charles H. Peckham
_____
Charles H. Peckham

EXHIBIT A

## CONFIDENTIALITY, NON-DISCLOSURE, NON-COMPETITION AND NON-SOLICITATION AGREEMENT

This Agreement is made and entered into as of the 15th day of June, 2015, between **IPFS Corporation**, a Missouri corporation (the "Employer"), and **Sue Ann Lopez**, a resident of Texas (the "Employee").

WHEREAS, Employer proposes to engage Employee to perform certain services for Employer through which Employee will have access to significant Confidential Information regarding Employer's business and its relationships with persons with whom the Employer does business, all of which Employer wishes to maintain secret; and

WHEREAS, Employee desires to acquire access to Employer's Confidential Information and business relationships and to assist Employer in preserving its business secrets, business relationships, Confidential Information, goodwill, and other protecteable business interests; and

WHEREAS, Employee and Employer desire to enter into a confidentiality and non-disclosure agreement and an ancillary agreement of non-competition and non-solicitation;

NOW, THEREFORE, for good and valuable consideration, including, but not limited to, employment or continued employment, receipt of which is acknowledged by Employee, Employee agrees as follows with Employer:

1.  <u>Definitions.</u>  As used herein the terms set forth below are defined as follows:

    a)  The term "Competitive Activity" means the business of providing financing of property and casualty insurance premiums (including automobile insurance premiums).

    b)  The term "Confidential Information" means Producer and Potential Producer lists, computer software, computer programs and all other types of computer technology, methods and formulas, marketing data, sales techniques, and advertising, traveling and canvassing methods, brochures or instructions relating to the products, services or business of the Employer or any Producer or Potential Producer of the Employer and credit information about Employer's Producers. It also includes Employer's Trade Secrets, as defined by the Missouri Uniform Trade Secrets Act. The terms "Confidential Information" also includes any other information which the Employer may from time to time identify to Employee as information which it wishes to preserve as secret. Such other information and the dates on which the Employer so advised Employee may, but need not be, recorded as an exhibit to be attached to and deemed a part of this Agreement.

    c)  The term "Potential Producer" means a producer which the Employer actively solicits through personal contact or direct correspondence prior to or during Employee's association with the Employer.

EXHIBIT

A

d) The term "Producer" means all managing general agents, general agents, insurance carriers, insurance companies, insurance agencies or brokers, and their agents and insureds with whom the Employer does business.

2. Non-Disclosure and Protection of Confidential Information.

a) Employee recognizes that, because of the nature of the business of Employer and the nature of Employee's position with Employer, Employee will, over the course of employment, be given continuing and increasing access to certain valuable proprietary Confidential Information, which is developed, compiled and utilized by Employer. Employee acknowledges that the Employer has a proprietary interest in Confidential Information and has a legitimate interest in protecting such Confidential Information from the threat of damage or disclosure. By executing this Agreement, Employee acknowledges that Employee has been advised that the Employer wishes to preserve the Confidential Information as secret. Unless Employee shall first secure the written consent of the Employer, Employee shall not disclose or use at any time, either during or subsequent to the term of this Agreement, any Confidential Information, whether or not patentable, of which Employee becomes informed during such time whether or not developed by Employee, except as required in the exercise of Employee's duties to the Employer. This obligation shall not apply to any Confidential Information which is or shall become a part of the public domain through no fault of Employee.

b) Upon the termination of this Agreement, Employee shall promptly deliver to the Employer all manuals, sales materials, letters, notes, notebooks, reports, programs, Producer and Potential Producer lists, and all copies thereof, and all other materials of a secret or confidential nature related to the business of the Employer or any Producers or Potential Producer of the Employer, which are in the possession or under the control of Employee.

c) Employee acknowledges that Employee's breach of the covenants contained in this paragraph 2 will cause irreparable damage to the Employer, and accordingly, Employee agrees that the Employer may seek equitable relief to enforce the obligations imposed hereunder.

d) This paragraph 2 is intended to supplement, but not limit or supplant, any obligation of Employee or remedy of the Employer which may be otherwise imposed on Employee or available to the Employer under common law or equity without written agreement.

3. Ancillary Agreement of Non-Competition and Non-Solicitation. Employee hereby acknowledges that the remedies at law of the Employer for any breach of Employee's obligations contained herein would be inadequate and that the Employer shall be entitled to injunctive relief or any other equitable relief for any violation hereof and Employee, in any equitable proceeding, agrees not to claim that a remedy at law is available to the Employer. In

- 2 -

consideration for Employer's promise to provide Employee with Confidential Information, specialized knowledge and training, and access to customer relationships, and to protect the Employer's goodwill, Confidential Information, and other protectable business interests, all of which Employee agrees are the property of the Employer and not the Employee, Employee agrees that, without the Employer's written consent, during Employee's employment with Employer and for a period of two (2) years thereafter, should Employee's termination occur voluntarily, with or without cause, or upon expiration of any Employment Agreement, Employee will not, directly or indirectly, in any manner or capacity:

        a)      Engage in or have a financial interest in any Competing Activity, directly or indirectly, including but not limited to any activity that at any time involves contacting or soliciting or attempting to contact or solicit any Producer or Potential Producer in Texas.

        b)      Solicit, call on, induce, or attempt to induce any employee to leave the employ of Employer or in any other way damage or reduce the relationship between Employer and such person; and

        c)      Induce or attempt to induce on her own behalf, or on behalf of any person or entity other than the Employer, whether as an agent, employee, associate, consultant, or in any other capacity, call upon, solicit, defer or take away, or attempt to do so, the business or patronage of any Producer, Potential Producer, or client of the Employer in the United States with which Employee dealt while employed by Employer.

    4.    Consideration. In addition to the commencement of Employee's at-will employment with Employer, Employer will pay Employee a one-time payment of Five Thousand Dollars ($5,000), subject to normal taxes, withholdings and other deductions required by law. Employer further promises to to provide Employee with access to Employer's Confidential Information, including but not limited to Producer and Potential Producer lists, marketing data, and sales techniques, as well as to provide Employee with specialized knowledge and sales training specific to the insurance premium financing industry and access to Employer's business relationships. Employee agrees that the Employer's promised consideration constitutes sufficient consideration for Employee's promises within this Agreement.

    5.    Savings Clause. Notwithstanding anything to the contrary contained herein, and if, and only if, a provision of the type contained in this paragraph 5 is enforceable under the jurisdiction in question, if any one or more of the provisions contained in any paragraph of this Agreement shall for any reason be held to be excessively broad as to time, duration, geographical scope, activity or subject, said provision shall be construed by limiting or reducing it so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

    6.    No Other Restrictive Covenant. Employee hereby represents and warrants to the Employer that Employee is not subject to any noncompetition or other undertaking, including, but not limited to, any duty to keep and/or retain any information that Employee may have or may have learned as secret, with any other party outside of this Agreement which in any respect would restrict Employee's rendering services to Employer. Employee agrees to indemnify and

- 3 -

hold harmless Employer against any and all liability and expense which Employer might incur as a result of any breach of this representation and warranty.

7.  Employer Contact of Future Employer. Employee agrees that Employer may contact any person or entity with whom Employee becomes employed by or associated with during the term of these restrictions to inform them of the existence of this Agreement and the substance of the restrictions contained herein.

8.  Employee Representation. Employee represents that Employee's experience, capabilities and personal assets are such that this Agreement does not deprive Employee from either earning a livelihood in the unrestricted profession and business activities which remain open to the Employee or from otherwise adequately and appropriately supporting the Employee.

9.  Employment at Will. Employee acknowledges that Employee is an employee at will and that execution and delivery of this Agreement by Employer shall not be construed so as to guarantee Employee's continuing employment with Employer. Employee acknowledges that Employer may terminate Employee's employment at any time for any reason or no reason, with or without warning or notice. Employee further acknowledges that the provisions of this Agreement shall survive the employment relationship.

10.  Jurisdiction and Choice of Law. In the event of a dispute concerning this Agreement which cannot be resolved by mutual agreement, the parties shall be required to pursue their rights in any court of competent jurisdiction sitting in Kansas City, Missouri, which shall be the exclusive mandatory venue for any such disputes. This Agreement will be governed by Missouri law, without regard to its choice of law rules.

11.  Attorney's Fees. In the event Employer retains an attorney in connection with enforcement of this Agreement, Employer shall be entitled to its reasonable attorney's fees associated with enforcing its rights under this Agreement.

12.  Waiver and Estoppel. No term or condition of this Agreement shall be deemed to have been waived nor shall there be any estoppel against the enforcement of any provision of this Agreement except by written instrument of the party charged with such waiver or estoppel. The waiver by any party of the breach of any provision of this Agreement by the other party shall not operate or be construed as a waiver of any subsequent breach by such other party.

13.  Successor Rights. This Agreement and all rights and obligations of the Employer shall be binding upon and inure to the benefit of Employer's respective successors. The term "successors" shall mean only any person that, by merger, consolidation, purchase of assets, liquidation or voluntary assignment, acquire substantially all of the assets of Employer, as applicable. This Agreement will bind Employee's heirs and personal representatives.

14.  Non-Competition and Non-Solicitation Period Extension. Employee acknowledges and agrees that in the addition to the remedies Employer may seek and obtain pursuant to this Agreement, the non-competition and non-solicitation period will be extended by any and all periods in which Employee is found to have been in violation of the covenants contained in paragraph 3 of this Agreement.

- 4 -

15. _Miscellaneous._ This Agreement constitutes the entire Agreement of the parties respecting the subject matter hereof and supersedes all prior understandings or agreements, oral or written, among all or any of such parties. This Agreement shall not be amended except by written agreement signed by all of the parties hereto. This Agreement shall be binding upon, inure to the benefit of and be enforceable by the parties hereto and their respective heirs, personal representatives, successors and permitted assigns. In the event any one or more of the provisions contained in this Agreement or any application thereof shall be held to illegal, the enforceability of the remaining provisions of this agreement or any other application thereof shall not in any way be affected or impaired thereby. Whatever the context hereof shall require, the use of any gender shall include all genders and the singular shall include the plural, and vice versa. All exhibits attached hereto are incorporated herein by this reference.

IPFS Corporation,
a Missouri corporation,

By: _____
      Michael S. Gallagher, President     Date

Employee:

Sue Ann Lopez            6/15/15
                                      Date

- 5 -

# IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement

## Non-Disclosure and Confidentiality Provisions

Associates who have access to Confidential Information as the result of their employment with IPFS Corporation and affiliated entities (all referred to herein as the "Company") agree to comply with the Non-Disclosure and Confidentiality Provisions of this Agreement, including but not limited to, the agreement not to disclose such Confidential Information except as necessary to perform the functions of their assigned job.

This Confidential Information may relate but is not limited to the operations, activities and business affairs of: (i) the Company; (ii) the Company's customers and insureds, (iii) managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds with whom the Company does business or otherwise communicates; (iv) other individuals and entities with whom the Company does business or otherwise communicates; and (vi) information about other Associates employed by the Company. Any unauthorized or otherwise improper use or disclosure of such Confidential Information could cause harm to the Company or other individuals or entities if revealed outside of the Company, if revealed internally to persons without a legitimate need to know, or if used for any purpose other than in furtherance of the Company's business.

Confidential Information includes, but is not limited to non-public information, whether or not patentable, developed, compiled, and/or utilized by the Company regarding or related to:

- Financial data and transactions;
- Personal healthcare information;
- Contracts;
- Lists of actual or potential customers, clients, and producers;
- Computer software, computer programs and all other types of computer technology;
- Methods and formulas;
- Marketing data;
- Sales techniques;
- Advertising;
- Traveling and canvassing methods;
- Brochures or instructions relating to the products, services or business of the Company or any if its actual or potential customers, clients, and producers;
- Credit information; and
- Personal and family information of a private nature.

Confidential Information also includes the Company's Trade Secrets, as defined by the Missouri Uniform Trade Secrets Act or any other applicable law.

The items set out above are not exhaustive, and Confidential Information can also include any other information which the Company may from time to time identify (verbally or in writing) to Associates as information which it wishes to preserve as confidential. Associates need to be aware that some information that seems quite ordinary may, in fact, be highly sensitive and confidential.

A-8

EXHIBIT

B

The Company intends to maintain the private and secret nature of any Confidential Information. The unauthorized or otherwise improper use and/or disclosure of Confidential Information may violate the rights of the Company, or its customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds or other individuals and entities with whom the Company does business, and in some circumstances such use or disclosure could give rise to civil or criminal liability. Associates should assume that information obtained from or through employment with the Company is confidential unless the information is known to the general public or an authorized Company official states the information is not confidential. A supervisor or other member of the leadership team should be contacted if there are any questions about how a particular piece of information should be handled, including whether or not it is considered confidential.

It is essential that Associates refrain from utilizing, discussing or otherwise disclosing Confidential Information, regardless whether it is conveyed in verbal, written or any other form, except as necessary to perform the functions of an assigned job or as otherwise authorized by an appropriate member of the leadership team. To the extent Confidential Information is set out in Company or third-party documents with which Associates are entrusted, Associates must not leave any such documents unattended or in public places, including public areas of the Company. In addition, to the extent Confidential Information is maintained in electronic devices provided by the Company, Associates must take appropriate measures to maintain the security of such devices and the information contained therein.

At the time of any termination of employment, Associates will be required to promptly deliver to the Company all documents or other materials in any form – electronic or otherwise – containing Confidential Information, including but not limited to manuals, sales materials, letters, notes, notebooks, reports, programs, customer lists, client lists, producer lists, rate charts, and all copies thereof, and all other materials of a secret or confidential nature related to the business of the Company or individuals and entities with whom the Company does business, which are in the Associate's possession or under the Associate's control.

## Non-Solicitation and Related Confidentiality Provisions

Associates who have access to Confidential Information and/or contacts with the Company's business relationships as the result of their employment with the Company further agree to comply with the Non-Solicitation Provisions of this Agreement.

The Company values each of our Associates and expends significant resources to train and acclimate them to perform their assigned duties. Associates also obtain Confidential Information regarding the Company and, frequently as part of their job, Associates are entrusted with contacts and relationships on behalf of the Company with individuals and entities with whom the Company does business and obtain Confidential Information regarding those individuals and entities.

Under the terms of this Agreement, the Company and the Associate agree that the Company has legitimate interests in: (a) the Company's investment in its Associates; (b) the promotion of workplace stability; (c) protection of goodwill; (d) protection of Confidential Information and business relationships; and (e) prevention of unfair competition by former Associates using contacts with the Company's employees, customers and insureds or with managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors,

A-9

insurance agencies or brokers, and their agents and insureds. The Associate further agrees he/she shall not engage in the following conduct during employment with the Company or for one year following the termination of employment with the Company for any reason unless the Associate receives the written consent of the Company's President:

a. The Associate shall not hire or recruit any employee of the Company, solicit any employee to leave employment with the Company, or otherwise interfere with the employment of any employee of the Company; and

b. For any person or entity with whom the Associate communicated on behalf of the Company during his/her employment as part of his/her work duties (including, without limitation, customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds), the Associate shall not communicate with such person or entity for the purpose of directly or indirectly soliciting business in competition with the Company or otherwise competing with the Company.

c. The Associate shall not use in any manner Confidential Information as described in this Agreement to compete with the Company or to assist any person or entity in competing with the Company.

## Consideration by Company

In exchange for the promises by the Associate under this Agreement, the Company agrees to provide the Associate with: (a) continued access to existing and new Confidential Information; (b) the opportunity for continuing and new contacts with the Company's customers and insureds and with managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, insurance agencies or brokers, and their agents and insureds; (c) continued employment; and (d) eligibility for potential future salary increases and promotions.

## General Provisions

The provisions of this Agreement are severable. That means that if any provisions are found invalid or unenforceable by a court or arbitrator, it shall not affect the application and enforcement of the rest of this Agreement. Also, whenever possible and consistent with the objectives of this Agreement, any otherwise invalid term should be reformed and enforced by a court or arbitrator.

The Company specifically agrees that nothing in this Agreement is intended to unlawfully interfere with an Associate's rights to collectively bargain, to engage in protected, concerted activity, or to exercise other rights protected under the National Labor Relations Act.

The Company and Associates further agree that the Company has legitimate interests to protect under the terms of this Agreement, a breach of this Agreement could cause irreparable damage to the Company, and the Company may seek equitable relief to enforce the obligations established under this Agreement in addition to any other remedies that might be available under applicable law, in the Courts of Jackson County, Missouri and in accordance with the provisions of the IPFS Corporation Arbitration Program.

The Company asks all Associates to indicate their agreement to this Agreement by signing the accompanying Acknowledgment and Agreement to Non-Disclosure, Confidentiality and Non-Solicitation Agreement. The Company believes this Agreement is good for both our organization and our employees, but if any Associate would like to negotiate or discuss a possible different agreement on any subject covered by this Agreement, the Associate should contact the Manager of Human Resources.

The obligations of Associates under this Agreement are in addition to the obligations that any Associate may have under any other confidentiality, non-solicitation, non-competition, restrictive covenant or similar agreement. This Agreement does not supersede or in any way lessen the obligations under any such other agreements and the obligations under any such other agreements remain in full force and effect. The terms of this Agreement can only be modified in a written document signed by both the Associate and the President of IPFS Corporation.

A-11

# IPFS Corporation Arbitration Program

Effective November 10, 2015, IPFS Corporation and affiliated entities (all referred to herein as the "Company") implemented and agreed to this *IPFS Corporation Arbitration Program* (referred to herein as the "*Program*").

The Company believes that management and employees working together in good faith will result in few, if any, future legal disputes. However, because we believe this *Program* provides a fair and efficient process to resolve employment disputes related to legal rights, we ask all employees to indicate their agreement to the *Program* by signing the accompanying *Acknowledgment and Agreement to IPFS Corporation Arbitration Program*. The Company believes the *Program* is good for both our organization and our employees, but if any employee would like to negotiate or discuss a possible different agreement on dispute resolution, the employee should contact the Manager of Human Resources.

If any employee, former employee, or applicant (all referred to herein as "Associate") has a covered claim related to legally-protected rights, the claim shall be subject to independent and neutral arbitration under the terms of this *Program*. The *Program* also applies to claims by the Company against an Associate. It also applies to claims by or against an Associate who has ended employment with the Company.

This *Program* is a contractual commitment by the Company. The terms of the *Program* have been agreed to by the President of IPFS Corporation, on behalf of the Company. The terms of the *Program* cannot be changed unilaterally by the Company without the agreement of the affected Associate. The Program remains in effect after termination of employment or after transfer of an Associate to an affiliated entity.

## How Does the *Program* Work?

The Arbitration process will be administered by the American Arbitration Association (AAA), which is a not-for-profit organization with a long history and experience in the field of alternative dispute resolution. Arbitrations will be conducted under AAA's Employment Arbitration Rules, except as modified by this *Program*. The Employment Arbitration Rules are part of AAA's Employment Arbitration Rules and Mediation Procedures. The AAA Rules and Procedures are amended by AAA from time to time. The Rules and Procedures in effect at the time proceedings are initiated will apply, except as modified under this *Program*. Also, if an Associate does not agree to any modification by AAA of the Rules and Procedures after the implementation date of this *Program*, then the modification shall not apply. An Associate can always secure a copy of the current AAA Rules and Procedures and information about AAA by accessing the AAA website at www.adr.org, contacting AAA at 212 716-5800, or contacting Human Resources.

This *Program* does not require mediation, but if an Associate who files a claim under the *Program* wishes to mediate his/her claim, the Company agrees to participate in mediation. The Company further agrees to pay the fees of the mediator under AAA's mediation procedures or under any other mutually agreed upon procedure.

The Company also agrees to pay the Arbitrator fees and the costs charged by AAA, except that if the Associate initiates a claim, the Associate must pay an initial $100.00 fee to AAA, which is equivalent

Case 4:17-cv-01059-DGK   Document 5-3   Filed 02/23/18   Page 28 of 33

EXHIBIT

C

or less than what the Associate would be required to pay if he/she filed a lawsuit. (If an Associate is indigent, he/she may file the claim without a fee, pending a decision by the Arbitrator on a request for fee waiver based on the law and applicable AAA Rules.)

The Arbitrator shall be an independent, neutral and licensed attorney selected from a panel of at least three arbitrators provided by AAA, all of whom must satisfy the following qualifications: (1) former federal court judges and magistrates or former state court judges in appellate courts or trial courts of full general jurisdiction (which does not include municipal courts or "private judges"); or (2) lawyers who have practiced law and/or served as Arbitrators in the field of employment law for at least 15 years and are rated "AV" by Martindale-Hubbell. The AV rating is for lawyers considered to have reached the height of professional excellence and recognized for the highest levels of skill and integrity.

The Parties shall randomly decide who strikes first and then take turns alternately striking one name from the list of qualified arbitrators until there is only one name remaining. The remaining name shall be the Arbitrator. In any case, the Associate and the Company also may agree on a mutually acceptable Arbitrator, and agree to bypass the AAA arbitration selection and administration process.

The Arbitrator shall have the exclusive authority to resolve all disputes relating to the facts or the law. This includes the authority to grant summary disposition of claims prior to hearing and to grant all relief that a court of competent jurisdiction could grant based on the claims asserted. The Arbitrator must follow all applicable law. The Arbitrator shall decide the case in the same manner as a federal district court judge hearing the case without a jury, and shall apply the federal rules of evidence (except as modified in this *Program*). The Arbitrator shall issue a signed written award and decision stating the findings of material facts and conclusions of law that provides the basis for the decision. The Federal Arbitration Act governs the enforcement of this *Program* and proceedings under the *Program*, other than as modified by the *Program*. The Federal Arbitration Act applies because the Company's business involves interstate commerce. If the *Program* is found not enforceable under the Federal Arbitration Act, then applicable state law shall apply.

The arbitration hearing shall be held in the county of the Associate's principal place of employment or prospective employment, unless another location is agreed to by the parties. Prior to the hearing, the parties shall be entitled to discovery sufficient to fairly and adequately prosecute or defend claims as determined by the Arbitrator, taking into account the objective of an efficient, fair and prompt resolution of claims. Discovery shall include at a minimum the right to two depositions, ten interrogatories and ten document requests by each party. Associates, at their expense, may be represented by an attorney at arbitration. The following persons may be present at the hearing: the Arbitrator and any recorder of the hearing; the Associate and his/her spouse, attorneys, experts, and witnesses; and the Company's attorneys, management, human resource personnel, experts, and witnesses. No one else may be present without good cause determined by the Arbitrator. The arbitration and hearing shall be confidential, to the extent allowed under applicable law.

The parties shall provide lists of the names and addresses of witnesses and copies of exhibits to each other at least 30 days prior to the hearing and may supplement this information with additional rebuttal witnesses and exhibits up to 20 days prior to the hearing. The parties shall be entitled to file post-hearing briefs and proposed findings of fact and conclusions of law. The Arbitrator shall set a post-hearing briefing schedule under which the party with the burden of proof files first and the opposing party files second.

A-3

The Arbitration decision shall be binding on the Company and the Associate; however, the Company or the Associate may within 30 days after the decision file a reconsideration motion or other motion with the Arbitrator, who retains jurisdiction to consider and rule on any such motion. Additionally, the Company or the Associate may serve written notice of an Arbitration Appeal: (1) within 60 days after the Arbitration decision if no reconsideration or other motion is filed within 30 days after the Arbitration decision; or (2) if a reconsideration or other motion is filed within 30 days after the Arbitration decision, then within 30 days after a decision on the reconsideration motion or other motion. If a party serves notice of an Arbitration Appeal, the selection of an Arbitrator to decide the appeal shall be under the arbitration selection process in this *Program*. In an Arbitration Appeal, the Arbitrator shall review the Arbitration decision on the same legal grounds that a first level federal court of appeals would review the decision of a trial judge sitting without a jury. The Arbitrator in an Arbitration Appeal shall issue a written decision after considering written briefs and oral argument. If the Arbitration Appeal or any court review results in the direction of a new hearing or other further proceedings before an arbitrator, any party shall have the right to require that a new Arbitrator be selected under this *Program* to handle such new hearing or other further proceedings. The Arbitration decision and award shall not become final until the conclusion of the arbitration process under this *Program*. After the conclusion of the arbitration process, including the time period for an Arbitration Appeal and related proceedings, the Company or the Associate may file a legal action within 30 days to enforce, vacate, modify and/or appeal the final decision and award based on any available legal ground in the federal district court with jurisdiction over the county in which the hearing was held.

### How to Assert a Claim Under the *Program*

An Associate who wishes to assert a claim must submit a written request for arbitration by Certified Mail/Return Receipt Requested to the Manager of Human Resources, within the time period established by the applicable statute of limitations under the law. The written request should include supporting documentation and a statement of the facts, the nature of the claim, and the damages and/or other remedies sought. If the Company wishes to assert a claim against an Associate, it also must submit such a written request for arbitration with supporting documentation and statement to the Associate by Certified Mail/Return Receipt requested within the time period established by the applicable statute of limitations under the law. The claim is waived if the Associate or the Company fails to submit a timely and proper written request for arbitration, unless there are valid legal grounds to excuse the failure. After a request for arbitration, the parties shall cooperate on a joint submission of the claim to AAA, and the Company agrees to pay all AAA and arbitrator fees above $100.00. If the Associate asserts indigent status, the Company agrees to advance the initial $100.00 fee on behalf of the Associate, pending a decision by the Arbitrator. The Associate does not need to pay the $100.00 fee if only the Company asserts a claim.

All claims must be asserted, heard and resolved on a single Associate individual basis, unless otherwise agreed to by all parties. Claims against the Company by multiple Associates may not be joined together in the same arbitration. The Company also may not assert claims against multiple Associates in the same arbitration. An Associate may not assert claims as a class action or collective action on behalf of other Associates, either in court or under this *Program*. An Associate also may not have a claim asserted on his/her behalf by another person as a class representative or otherwise. This provision does not bar an individual associate from asserting a pattern or practice theory in support of his/her individual claim.

A-4

Any objection or challenge to the enforceability of this *Program*, or the enforceability of this *Program*'s prohibition on class action, collective action and multiple Associate claims, shall be determined by the courts and not by the Arbitrator. An arbitrator shall not have the authority to allow a class action, collective action or other multiple Associate claims to proceed in arbitration without a court order directing that result.

### Coverage of this *Program*

This *Program* covers all legal claims arising out of or relating to employment, application for employment, or termination of employment, except for claims specifically excluded under the terms of this *Program*. The claims covered by this *Program* include, but are not limited to, the following types of claims: wrongful discharge under statutory law or common law; employment discrimination, retaliation and sexual or other harassment based on federal, state or local statute, ordinance or governmental regulations; retaliatory discharge or other unlawful retaliatory action; overtime or other compensation disputes; leave of absence disputes; tortuous conduct; defamation; violation of public policy; breach of contract; and other statutory or common law claims. It includes claims by an Associate against the Company and claims by an Associate against any fellow employee, supervisor, or manager based on alleged conduct within the scope of employment by the fellow employee, supervisor, or manager. It includes claims based on a *Notice of Right to Sue* issued by a government agency. It also includes claims based on events that occurred prior to the effective date of this *Program* or based on events that occur following the termination of employment. This *Program* also applies to any claims by the Company against an Associate.

The only claims excluded from this *Program* are claims by an Associate for workers' compensation benefits, unemployment compensation benefits, ERISA-related benefits provided under a Company sponsored benefit plan, or claims filed with the National Labor Relations Board. Additionally, either the Associate or the Company may file a court action seeking provisional equitable remedies to the extent such remedies are available under the law, including but not limited to temporary or preliminary injunctive relief, either before the commencement of or during the arbitration process, to preserve the status quo or otherwise prevent damage or loss pending final resolution of the dispute pursuant to the terms of this *Program*. Also, this *Program* does not prevent or discourage an Associate from filing and pursuing an administrative proceeding before the Equal Employment Opportunity Commission or other federal, state or local administrative agency; however, if an Associate or the Company chooses to pursue a legal claim in addition to and/or following completion of such administrative proceedings, or if there is some other legal proceeding related to the claim following completion of the administrative proceedings, the claim then shall be subject to the terms of this *Program*.

### Contractual Nature of this *Program*

This *Program* creates a contract that binds the Company and each Associate to arbitrate employment-related legal claims. This *Program* does not in any way modify the employment-at-will status of any Associate.

The provisions of this *Program* are severable. That means that if any provisions are found invalid or unenforceable by a court, it shall not affect the application and enforcement of the rest of this *Program*. Also, whenever possible and consistent with the objective of this *Program* to arbitrate all covered claims, any otherwise invalid term should be reformed and enforced by a court.

A-5

If a lawsuit is filed prior to arbitration, any action by an Associate or the Company related to removal of the lawsuit to federal court and/or remand of the lawsuit to state court prior to a motion to compel arbitration shall not be a waiver by either the Associate or the Company of any rights under this *Program*. Also, the *Program* is not intended to unlawfully interfere with an Associate's rights to collectively bargain, to engage in protected, concerted activity, or to exercise other rights protected under the National Labor Relations Act, and an Associate will not be subject to disciplinary action of any kind for opposing any provisions of this *Program*.

THIS *IPFS CORPORATION ARBITRATION PROGRAM* IS A CONTRACT THAT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES AND WHICH WAIVES THE RIGHT TO A JUDGE OR JURY TRIAL.

A-6

# Acknowledgment and Agreement to IPFS Corporation
# Non-Disclosure, Confidentiality and Non-Solicitation Agreement

I acknowledge receipt of a copy of the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement* in the Addendum to the Associate Handbook effective November 10, 2015. I received an electronic copy of the Associate Handbook and Addendum via a hyperlink to the Company's Intranet Site. I understand that I may print a copy of the Handbook and Addendum from the Intranet Site or obtain a copy from Human Resources. The terms of the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement* are fully incorporated by reference into this Acknowledgment and Agreement.

I understand that by signing below, I indicate my agreement to the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement*. I also understand that any violation of the Agreement during my employment is grounds for disciplinary action, including termination of employment.

I understand that the Company encourages me to carefully read the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement*, and that I am welcome to contact the Manager of Human Resources if I have questions or would like to discuss or negotiate a possible different agreement on any subjects covered by the Agreement.

I further specifically understand and agree that, under the terms of the *IPFS Corporation Non-Disclosure, Confidentiality and Non-Solicitation Agreement*, I shall not ever disclose Confidential Information as described in the Agreement except as necessary to perform the functions of my assigned job during my employment with the Company, and I shall not engage in any of the following conduct during my employment and for one year following the end of my employment for any reason unless I receive the written consent of the Company's President: (a) I shall not hire or recruit any employee of the Company, solicit any employee to leave employment with the Company, or otherwise interfere with the employment of any employee of the Company; (b) for any person or entity with whom I communicated on behalf of the Company during my employment as part of my work duties (including, without limitation, any customers, insureds, managing general agents, general agents, insurance carriers, insurance companies, independent marketing organizations, third party processors, insurance agencies or brokers, and their agents and insureds), I shall not communicate with any such person or entity for the purpose of directly or indirectly soliciting business in competition with the Company or otherwise competing with the Company; and (c) I shall not use in any manner Confidential Information as described in the Agreement to compete with the Company or to assist any person or entity in competing with the Company.

Agreed:

_____   11/17/2015
ASSOCIATE'S SIGNATURE        DATE

_____
ASSOCIATE'S NAME  (please print)

_____
Mike Gallagher, President
IPFS Corporation
On Behalf of IPFS Corporation and
Affiliated Persons and Entities

A-3

EXHIBIT

D